**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID LAZAR, | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| CYCLACEL PHARMACEUTICALS, INC., and DATUK DR. DORIS WONG SING EE, | |
| Defendants. | |

### PRELIMINARY STATEMENT

1.      This case arises from a brazen scheme by Defendant Datuk Dr. Doris Wong Sing Ee ("Wong"), the CEO and controlling shareholder of Cyclacel Pharmaceuticals, Inc. ("Cyclacel"), to systematically disadvantage minority shareholders while enriching herself and favored insiders. Through a pattern of misconduct, Wong has repeatedly violated her fiduciary duties and contractual obligations, causing Plaintiff David Lazar—a minority shareholder—to suffer damages exceeding $12.5 million.

2.      **The Registration Exclusion Scheme.** In April 2025, Cyclacel filed a registration statement allowing the resale of over 170 million shares by select "Selling Shareholders." Wong included 35 million of her own shares for resale, along with shares owned by other insiders. Despite holding 39,021,180 shares (10.24% of the company), Plaintiff was deliberately excluded. When the registration became effective on April 29, 2025, insiders sold their shares at $4.89 per share. Had Plaintiff been included on a pro-rata basis, he would have generated proceeds of $11,882,683.45. Instead, Wong kept this windfall for herself and allies while leaving Plaintiff with illiquid, unregistered shares. About two weeks after the share sale, Wong initiated back-to-back

reverse stock splits which had the cumulative effect of reducing shareholder holdings by a factor of 240:1. Following the splits, Plaintiff's 39,021,180 shares were reduced to 162,588.25 shares.

3.    **The Legacy Cash Misappropriation**. Wong's misconduct continued with the misappropriation of Cyclacel's "legacy cash." In connection with earlier agreements, the parties established that under certain conditions, remaining legacy cash would be controlled by a three-person committee including Plaintiff for proper distribution. Both triggering conditions for this distribution occurred and at least $629,501.36 should have been made available to the committee. Instead, Wong misappropriated these funds in direct violation of her contractual obligations.

4.    Wong's conduct violates fundamental principles of corporate governance and contract law. As controlling shareholder and CEO, she owed fiduciary duties to all shareholders, including Plaintiff. Her selective exclusion from the registration opportunity while favoring insiders constitutes breach of fiduciary duty and oppressive conduct. Her misappropriation of legacy cash violates contractual agreements.

5.    As a result of this conduct, and as detailed below, Plaintiff has been damaged in excess of $12.5 million.

## PARTIES

6.    Plaintiff David Lazar ("Plaintiff" or "Lazar") resides in Panama City, Panama.

7.    Defendant Cyclacel Pharmaceuticals, Inc. is a Delaware corporation with its principal place of business at Level 10, Tower 11, Avenue 5, The Horizon, Bangsar South City, No. 8, Jalan Kerinchi, 59200 Kuala Lumpur, Malaysia.

8.    Defendant Datuk Dr. Doris Wong Sing Ee is the CEO of Cyclacel and a resident of Malaysia.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) as this is a civil action between citizens of a state and citizens or subjects of a foreign state, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10.     Plaintiff David Lazar resides in Panama City, Panama, and is therefore a citizen of a foreign state for diversity purposes.

11.     Defendant Cyclacel Pharmaceuticals, Inc. is a corporation incorporated under the laws of the State of Delaware and it principal place of business is in Kuala Lumpur, Malaysia. It is therefore domiciled in Delaware and Malaysia for diversity jurisdiction purposes.

12.     Defendant Datuk Dr. Doris Wong Sing Ee is a citizen and resident of Malaysia.

13.     Complete diversity of citizenship exists between Plaintiff and Defendants as required by 28 U.S.C. § 1332(a).

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 pursuant to a forum selection clause in the February Purchase Agreement.

## FACTUAL BACKGROUND

### A.  Cyclacel Allows Its CEO and Other Insiders To Sell Shares, But Not Plaintiff

15.     Cyclacel is a publicly traded company listed on the Nasdaq Capital Market, engaged in the development of pharmaceutical products.

16.     David Lazar is a Cyclacel shareholder.

17.     On January 2, 2025, Cyclacel entered into a Warrant Exchange Agreement with Armistice Capital Master Fund Ltd. ("Armistice"), a New York-based entity, pursuant to which Armistice exchanged certain warrants for 24,844,725 shares of Cyclacel common stock and $1,100,000 in cash.

18.     Section 1.4 of the Armistice Agreement imposed a mandatory obligation on Cyclacel to file a registration statement with the SEC within 75 calendar days following the closing date to register the resale of Armistice's 24,844,725 shares.

19.     The Armistice Agreement further required Cyclacel to use best efforts to cause the registration statement to become effective within 110 calendar days, with significant financial penalties for non-compliance, including monthly liquidated damages equal to 1.0% of the aggregate market value of the unregistered shares.

20.     The Armistice Agreement did not prevent other shareholders from participating in "piggyback" registrations alongside Armistice's mandatory registration.

21.     To satisfy its contractual obligation to Armistice under this New York-governed agreement, Cyclacel was required to file a registration statement, which became the predicate for the April 2025 registration statement.

22.     Rather than limiting the registration statement to Armistice's shares, Wong and other insiders opportunistically decided to "piggyback" their own shares onto this mandatory registration to facilitate their own share sales.

23.     Accordingly, on April 9, 2025, Cyclacel submitted a Draft Registration Statement to the SEC for the resale of up to 170,026,676 shares of common stock by a group of individuals designated as "Selling Shareholders."

24.     The Registration Statement included 35,000,000 shares of common stock personally owned by the CEO of Cyclacel, Datuk Dr. Doris Wong Sing Ee, as well as shares owned by other affiliated or other favored insiders, for resale.

25.     The chart below, taken from the Cyclacel's registration statement, lists the selling shareholders:

Table of Contents

| Name of Selling Shareholders[1] | Shares Beneficially Owned Prior to the Offering | | Number of Shares Being Offered | | Shares Beneficially Owned After Offering | | |
|---|---|---|---|---|---|---|---|
| | Number of Shares of Common Stock | Number of Shares of Preferred Stock | Number of Shares of Common Stock Being Offered[2] | Number of Shares of Preferred Stock Being Offered | Percentage of Outstanding Shares of Common Stock[2] | Number of Shares of Preferred Stock[2] | Percentage of Outstanding Shares of Preferred Stock[2] |
| David Lazar | 39,021,180 | - | | | 10.24% | | |
| Armistice Capital Master Fund Ltd.[3] | 24,844,725 | - | 24,844,725 | - | 6.52% | - | - |
| Ho Kee Wee[4] | 27,500,000 | 250,000 | 27,500,000 | - | 7.21% | - | - |
| Tan Kok Hui[5] | 27,500,000 | 250,000 | 27,500,000 | - | 7.21% | - | - |
| Suria Sukses Engineering Sdn. Bhd.[6] | 27,500,000 | 250,000 | 27,500,000 | - | 7.21% | - | - |
| Ho Jien Shiung[7] | 27,500,000 | 250,000 | 27,500,000 | - | 7.21% | - | - |
| Datuk Dr. Doris Wong Sing Ee[8] | 194,628,820 | - | 35,000,000 | - | 51.06% | - | - |

26.     The registration statement listed Plaintiff as a selling shareholder, and even listed the number of shares he owned – 39,021,180.  However, despite this inclusion in the registration statement, Plaintiff was given a 100% "cutback," meaning zero of his shares were actually offered for sale.

27.     Plaintiff's inclusion on the list of selling shareholders in the registration statement was part of a sophisticated manipulation scheme designed to create the deceptive appearance of a larger transaction while systematically excluding Plaintiff from any benefit.

28.     When PIPE transactions become too large, the SEC may view them as disguised primary offerings, which would trigger enhanced underwriter disclosure requirements and additional legal liability.

29.     To avoid SEC scrutiny of oversized PIPE transactions, registration statements typically include "cutbacks" that reduce the number of shares being offered for resale among different selling shareholders.

30.     Rather than simply excluding Plaintiff, Defendants employed a more manipulative scheme: they included Plaintiff's 39,021,180 unregistered PIPE shares in the registration statement table to inflate the apparent size of the total PIPE transaction, then imposed a 100% cutback on Plaintiff's portion.

31.    This artificial inflation of the apparent PIPE size through Plaintiff's shares enabled Wong to include a greater portion of her own 35,000,000 shares for sale and allowed four other investors, who were affiliates of Cylacel and/or Wong, to include 100% of their shares for resale.

32.    The scheme effectively used Plaintiff's shareholding as a tool to facilitate and justify the extensive share sales by Wong and other favored insiders, while Plaintiff received no benefit and was left with illiquid, unregistered shares.

33.    The Registration Statement became effective on April 29, 2025, allowing the Selling Shareholders to sell their registered shares at the closing price of $4.89 per share on that date.

34.    Had Plaintiff been included in the Registration Statement on a pro-rata basis, he would have been able to sell 2,438,823.75 shares of his common stock at the closing price of $4.89 per share, resulting in proceeds of $11,882,683.45.

35.    Approximately two weeks after Wong and the other favored Cyclacel insiders sold their shares, Defendant Wong orchestrated multiple reverse stock splits of Cyclacel in rapid succession in order to manipulate Cyclacel's capital structure to the detriment of shareholders like Plaintiff.

36.    On May 12, 2025, Cyclacel implemented a 1:16 reverse stock split, consolidating every 16 shares of common stock into one share.

37.    Less than two months later, on July 7, 2025, Cyclacel implemented an additional 1:15 reverse stock split, further consolidating every 15 shares of common stock into one share.

38.    The combined effect of these successive reverse stock splits was to reduce shareholder holdings by a factor of 240:1 (16 × 15), effectively consolidating 240 shares into one share over the span of less than two months.

39.     Following the splits, Plaintiff's 39,021,180 shares were reduced to 162,588.25 shares.

40.     The timing and frequency of these reverse stock splits, occurring in such close succession and proximity to the sale of her shares, demonstrates Wong's deliberate strategy to manipulate the company's share structure for her own benefit and to the detriment of minority shareholders.

41.     Upon information and belief, following these reverse splits, Wong intends to cause Cyclacel to issue additional shares, which will have the effect of diluting shareholders like Plaintiff.

**B. Wong Breaches Her Agreement With Plaintiff**

42.     On February 11, 2025, Plaintiff and Defendant Wong entered into a Securities Purchase Agreement (the "February Purchase Agreement") pursuant to which Plaintiff agreed to sell to Wong certain securities of Cyclacel.

43.     Pursuant to the February Purchase Agreement, Defendant Wong accepted Cyclacel's anticipated flow of funds described in Schedule 5.11 to each agreement.

44.      Schedule 5.11 specified that the cash on hand was meant to service known flows and potential flows outlined in the schedule, and that in the event expenses incurred were less than forecasted, a three-person committee consisting of David Lazar, David Natan, and Paul McBarron would have discretion to re-allocate the remaining funds so as to leave Cyclacel with $0 in legacy cash.

45.     The conditions triggering the committee's discretion included if the counterparty elected not to proceed with manufacturing Plogo and/or if non-Armistice warrant holders did not elect the cash payout option within 30 days of the February 10, 2025 fundamental transaction.

46.    On May 6, 2025, Cyclacel entered into an exchange agreement with FITTERS Diversified Berhad, fundamentally changing Cyclacel's operating business.

47.    No non-Armistice warrant holders sought to redeem their warrants within the specified timeframe.

48.    Based on the foregoing and the information provided to Plaintiff by Cyclacel, at least $629,501.36 in legacy cash should be available to the three-person committee for reallocation.

49.    Defendant Wong has allocated, or purported to allocate, the legacy cash for purposes not permitted by Schedule 5.11, in breach of the February Purchase Agreement.

50.    Section 8.3 of the February Purchase Agreement states that "each of the Parties agrees to submit to the jurisdiction of the federal courts located in the Borough of Manhattan in New York City in any actions or proceedings arising out of or relating to this Agreement."

51.    On June 4, 2025, Plaintiff's counsel sent a demand letter to Defendant Wong requesting immediate remittance of $629,501.36 to be distributed by the committee as required under the agreements.

52.    Defendant Wong has failed and refused to remit the funds or comply with the committee structure established in the agreements.

## CAUSES OF ACTION

### Count I: Breach of Fiduciary Duty (Against Cyclacel and Wong)

53.    Plaintiff David Lazar re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

54. As a Delaware corporation, Cyclacel owes fiduciary duties of loyalty and care to all shareholders, including Plaintiff, to act in good faith and ensure fair and equal treatment in corporate actions affecting shareholder rights and interests.

55. As a controlling shareholder and fiduciary, Defendant Wong owes a duty to Plaintiff and other minority shareholders to act in good faith and ensure fair treatment in corporate actions affecting shareholder rights and interests.

56. By employing a sophisticated manipulation scheme that included Plaintiff's shares in the registration statement solely to inflate the apparent size of the PIPE transaction while imposing a 100% cutback on his shares, and by using Plaintiff's shareholding to facilitate sales by favored insiders, Defendants breached their fiduciary duty of loyalty and fair dealing owed to Plaintiff.

57. By implementing multiple reverse stock splits in rapid succession without legitimate business justification, Defendants further breached their fiduciary duties by manipulating the capital structure in a manner designed to disadvantage minority shareholders while benefiting controlling parties.

58. Defendants' actions were undertaken in bad faith, as the exclusion of Plaintiff from the Registration Statement and the implementation of successive reverse stock splits lacked legitimate business purposes and were designed to benefit company insiders like Wong at the expense of shareholders, including Plaintiff.

59. Had Plaintiff been included in the Registration Statement on a pro-rata basis, he would have been able to sell approximately 2,438,823.75 shares of common stock at the closing price of $4.89 per share on April 29, 2025, yielding proceeds of $11,882,683.45.

60.    As a direct and proximate result of Defendants' breach of its fiduciary duty, Plaintiff suffered damages in the amount of $11,882,683.45, representing the proceeds he would have received had he been permitted to participate in the share resale on equal terms with other shareholders.

61.    **WHEREFORE**, Plaintiff David Lazar respectfully requests that this Court award compensatory damages in the amount of $11,882,683.45, together with pre-judgment and post-judgment interest, reasonable attorneys' fees and such other and further relief as the Court deems just and proper.

### Count II: Minority Shareholder Oppression (Against Wong)

62.    Plaintiff David Lazar re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

63.    Plaintiff is a minority shareholder of Cyclacel, holding approximately 10.24% of the shares.

64.    Defendant Wong is the Chief Executive Officer and 50.06% majority shareholder of Cyclacel. She exercises significant control over the company's operations and governance.

65.    As a controlling shareholder and fiduciary, Defendant Wong owes a duty to Plaintiff and other minority shareholders to act in good faith and ensure fair treatment in corporate actions affecting shareholder rights and interests.

66.    Defendant Wong exploited her position as majority shareholder by implementing a sophisticated manipulation scheme: (a) including Plaintiff's 39,021,180 shares in the registration statement to artificially inflate the apparent size of the PIPE transaction; (b) imposing a 100% cutback on Plaintiff's shares so he received no benefit; and (c) using this artificial inflation to

justify allowing herself and other favored insiders to sell their shares while systematically excluding Plaintiff from any participation.

67.    Defendant Wong further oppressed minority shareholders by orchestrating multiple reverse stock splits in rapid succession, implementing a 1:16 reverse stock split on May 12, 2025, followed by a 1:15 reverse stock split on July 7, 2025, without legitimate business justification.

68.    Defendant Wong's selective inclusion of her own shares and those of affiliated parties, while excluding Plaintiff, constitutes oppressive conduct that unfairly prejudiced Plaintiff's reasonable expectations as a minority shareholder to participate equally in opportunities to liquidate shares at a favorable market price.

69.    Defendant Wong's actions were undertaken in bad faith, with the intent to favor herself and affiliated parties, thereby marginalizing Plaintiff and depriving him of significant financial benefits afforded to other shareholders.

70.    As a direct and proximate result of Defendant Wong's oppressive conduct, Plaintiff suffered damages in the amount of $11,882,683.45, representing the proceeds he would have received had he been permitted to participate in the share resale on equal terms with other shareholders.

71.    **WHEREFORE**, Plaintiff David Lazar respectfully requests that this Court award compensatory damages in the amount of $11,882,683.45, together with pre-judgment and post-judgment interest, reasonable attorneys' fees and such other and further relief as the Court deems just and proper.

### Count III: Breach of Contract (Against Wong)

72.    Plaintiff David Lazar re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

11

73.    The February Purchase Agreement constitutes a valid and binding contract between Plaintiff and Defendant Wong.

74.    Plaintiff performed his obligations under the Agreement.

75.    Pursuant to the February Purchase Agreement, Defendant Wong accepted Cyclacel's anticipated flow of funds described in Schedule 5.11, including the provision that a three-person committee would have discretion to re-allocate remaining legacy cash under specified circumstances.

76.    The specified circumstances have occurred, entitling the committee to control the allocation of at least $629,501.36 in legacy cash.

77.    Defendant Wong has materially breached the February Purchase Agreement by allocating or purporting to allocate the legacy cash for purposes not permitted by Schedule 5.11 and by failing to remit the funds to the designated committee.

78.    As a direct and proximate result of Defendant Wong's breach, Plaintiff has suffered damages in the amount of at least $629,501.36.

79.    **WHEREFORE**, Plaintiff David Lazar respectfully requests that this Court award compensatory damages in the amount of $629,501.36, together with pre-judgment and post-judgment interest, reasonable attorneys' fees and such other and further relief as the Court deems just and proper

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff David Lazar respectfully requests that this Court:

A. Award compensatory damages in the amount of $11,882,683.45 on Counts I and II;

B. Award compensatory damages in the amount of at least $629,501.36 on Count III;

C. Award pre-judgment and post-judgment interest;

D. Award reasonable attorneys' fees;

E. Grant such other and further relief as the Court deems just and proper.


Dated:  August 6, 2025


**Gulko Schwed LLP**

By: /s/ Samuel Kadosh
Samuel Kadosh
Asher Gulko
525 Chestnut Street, Suite 209
Cedarhurst, New York 11516
212-500-1312
skadosh@gulkoschwed.com

*Attorneys for Plaintiff*